# H. LIONEL MEREDITH

*vs.*

## MARY BITNER DANZER ET AL.

*Building Restriction—Cost of "Dwelling"—Apartment House.*

Restrictions upon the use of land, the fee of which has been conveyed, are not favored, and their burden will be limited to what was plainly within the intent of the parties thereto.  p. 582

Restrictions in deeds will be construed strictly against grantors and all doubts resolved in favor of grantees.  p. 583

The word "dwelling," as used in a provision that no dwelling shall be erected costing less than a named amount, *held* not to apply to each separate apartment in a building erected as an apartment house, so as to prohibit the erection of such a building, costing over the amount named, merely because the number of apartments would be such that each would cost less than that amount.  pp. 582-585

*Decided January 19th, 1923.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN, J.).

Bill by Mary Bitner Danzer and William A. Danzer, her husband, against H. Lionel Meredith for an injunction. From a decree for plaintiffs, defendant appeals. Reversed in part.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*W. P. Wachter* and *J. Cleveland Grice,* for the appellant.

*Henry H. Keedy,* with whom were *Robert H. McCauley* and *C. Walter Baker* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court..

Mrs. Mary Bitner Danzer, one of the appellees, is the daughter and devisee of the late J. Irvin Bitner, who in his lifetime laid out a tract of land, containing thirty acres, more or less, situated near to, and northeast of, the old corporate limits of the City of Hagerstown, into lots, with streets, alleys and pavements, and had a plat thereof duly recorded under the name of Bitner's Addition to Oak Hill.

On November 11th, 1921, Mrs. Danzer entered into two written contracts of sale with the appellant of two adjoining lots, numbers 34 and 35, respectively, of said Bitner's Addition, situated on the east side of Oak Hill Avenue, each fronting fifty feet thereon and running back therefrom one hundred and eighty feet to Peach Alley, subject to the following conditions:

1. That no shop, store, factory, saloon, hospital, asylum or institution of kindred nature, shall be erected or maintained on said lots.

2. That said lots shall be occupied and used for residence purposes only. ·

3. That no building or fence shall be erected or kept on any lot within 50 feet of the curb line of said Oak Hill Avenue.

4. That no dwelling is to be erected on said lots costing less than $7,500.

·· ·Subsequent to the filing of the original bill of complaint, lot No. 35 was conveyed to appellant by a deed in which the above mentioned conditions are incorporated. The amended bill of complaint was filed February 3rd, 1922. It alleges, among other things, the facts above set out; that prior to the date of said contracts of sale plaintiffs sold and conveyed

other lots on said avenue, as follows: Lots Nos. 9, 10, 11, 16, 17, 18, 19, 21, 36, 37, 38 and 39; that all of said lots were sold, subject to the conditions above set out; that plaintiffs are still seised and possessed of lots Nos. 5, 6, 7, 8, 12, 14, 15, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 33 on said Oak Hill Avenue, upon all of which they plan to impose the same conditions and restrictions as to buildings as set forth above; that all of the lots in said addition are now within the corporate limits of the City of Hagerstown, and are in one of the most beautiful and exclusive residential sections of said city; that the incorporation of the aforesaid conditions into contracts entered into with the defendant and into the contracts with and deeds to other purchasers of lots on Oak Hill Avenue was part of a definite plan of development intended by plaintiffs to limit the character of buildings to be erected on said lots to single dwelling houses, each of which single dwellings would cost at least $7,500, to the end that only high class single residences would be built on said street and that other lots belonging to plaintiffs, as well as the lots purchased from plaintiffs, might be thereby enhanced in value; that plaintiffs are advised that defendant intends to erect and is now erecting on the aforesaid lot No. 35 a large building, which is to be used as an apartment house containing six or eight apartments, at a cost of approximately $20,000, and that he has already begun the foundation for the same and is preparing to proceed at once with the completion of said building, and intends to erect on lot No. 34 a large building which is also to be used as an apartment house, to contain six or eight apartments; that if the defendant is permitted to build said building, or any part thereof, on either of said lots, it will be an infringement on the rights of all other persons who have purchased lots from plaintiffs on Oak Hill Avenue, in this exclusive residential section, relying upon said restrictions and their observance, and that plaintiffs, who own a number of lots in the immediate neighborhood of lots numbers 34 and 35, as well as all other per-

sons owning property there, will suffer irreparable loss and injury, and that the whole plan of plaintiffs for the development of said property would be defeated, and that the other lots of plaintiffs on said Oak Hill Avenue in said addition would thereby be greatly depreciated in value; that plaintiffs have strictly observed and intend to observe all the said conditions and restrictions with respect to the lots on Oak Hill Avenue owned by them as aforesaid and that with the exception of the building complained of no buildings have been erected on any lots on said avenue except residences for a single family, each of which dwellings cost far in excess of $7,500; that there were other lots sold by plaintiffs to various persons situated in parts of said addition, other than Oak Hill Avenue, in the contracts and deeds for which there are other and different conditions and restrictions than those contained in the contracts and deeds for the said lots situated on said avenue; and on which lots dwellings costing less than $7,500 could, under the terms of said contracts and deeds, be erected, and have been erected, thereon, and that all the said conditions and restrictions so imposed on other parts of Bitner's Addition have been enforced by plaintiffs, but that the said lots on such other parts of Bitner's Addition were and are not nearly so desirable or valuable as the lots situated on Oak Hill Avenue, and that it was and is the purpose and intention of plaintiffs to have said avenue an exclusive residential street with only high class and expensive dwellings erected thereon, and that they had and have a definite plan for the development of said avenue other and different from the development of the other parts of said addition, and for that reason placed the conditions and restrictions in the contracts with the defendant and in all other contracts and deeds for lots situated on said avenue.

The prayer of the bill is for an injunction to restrain the defendant from constructing on said lots or any part thereof any apartment, or any dwelling to cost less than $7,500, and to require the defendant to remove the said apartment house

building or so much of it as he has erected upon said lots, and for general relief.

The bill was demurred to and the demurrer was overruled. The defendant then answered, admitting some of the allegations of the bill. He denies, however, that the conditions and restrictions in the deed of lots Nos. 38 and 39 are the same as those in his deed; also any knowledge of the alleged plan of plaintiffs to impose the alleged conditions and restrictions on the lots still held by them, and avers that they have not imposed and enforced similar conditions and restrictions on the other lots conveyed by them to various persons: he further denies that the incorporation of said conditions and restrictions in the several contracts with him and others was part of a definite plan of development intended to limit the character of buildings to be erected on said lots to single dwelling houses, each of which would cost $7,500, for the purpose of enhancing the value of the lots, or that to permit defendant to erect the proposed building would be an infringement on the rights of plaintiffs and other persons owning lots on said avenue, or that the plans of plaintiffs would be thereby defeated; or that plaintiffs have strictly observed and intend to observe all said conditions and restrictions, and points out different conditions and restrictions in certain deeds; avers that he never knew or had any knowledge or notice of any general plan or scheme of development of any kind or character whatsoever for said addition or any part or parts thereof, save such general plan as is set forth on the recorded plat and that there is no other general plan for said addition or any part thereof; that recently, with the knowledge of plaintiffs, apartment houses have been erected on lots 59 and 60 in close proximity to lots Nos. 34 and 35; and on lots 62, 64 and 65 duplex houses have been erected with the knowledge of plaintiffs, and the plaintiffs have acquiesced in and never made any effort to prevent the erection of said buildings; that prior to the filing of said

bill of complaint defendant had, to the knowledge of plaintiffs, expended large sums of money in the erection of the building complained of, and that for some time prior thereto plaintiffs knew the character of building he intended to erect and made no effort to prevent the erection thereof, and that they knew he purchased said lot or lots for the purpose and with the intention of erecting said building thereon and that he has not violated any of the conditions or restrictions in his contracts or deeds.

The exhibits filed by defendant show that the words used in the conditions and restrictions as to character and cost of residences in some of the deeds to lots on Oak Hill Avenue are not exactly the same as in deeds to defendant. For instance, the restriction, as to lots 38 and 39, is to "a single residence or single dwelling house" to cost not less than $7,500; as to lots 1 and 2, the restriction was "one residence on any lot of 50 feet, and the minimum cost fixed was $2,500; as to lot No. 3, the restriction was "to residential purposes only." It will be noted, however, that the deeds to Lots 1, 2 and 3 were made back in the year 1905 by the father of Mrs. Danzer and not by the appellees; and it appears, from the agreed statement, that the houses on these lots are single residences and that each of them cost more than $7,500.

The other deeds filed as exhibits are to lots not on Oak Hill Avenue. In these the restrictions are materially different. For instance, as to lot No. 60, the restriction is "that no single dwelling to cost less than $3,000, or double dwelling to cost less than $4,500 shall be erected on any lot of fifty feet"; the same as to lots 59, 62, 64 and 65.

The agreed statement of facts is as follows:

"It is hereby this 22nd day of May, A. D. 1922, agreed by the respective parties to the above entitled case that the following, together with the exhibits, heretofore filed by the respective parties, shall be taken and considered by the courts as the facts in said case. It is also further agreed, however, that the court is not to consider as facts anything in this agreed state-

ment of facts that is in conflict with the facts as they may appear from the aforesaid certified exhibits heretofore filed by the respective parties in this cause, and that where the facts that appear from said certified exhibits are in conflict with this agreed statement of facts, that the facts appearing from said certified exhibits shall control.

"1.    That J. Irvin Bitner, late of Washington County, Maryland, deceased, in his lifetime subdivided and laid out 'Bitner's Addition to Oak Hill,' and had recorded the plat thereof, which has been heretofore filed in this case, marked Exhibit    , with the conditions and restrictions as set out thereon.

"2.    That by his last will and testament the said J. Irwin Bitner devised the said tract of land to his daughter, Mary Bitner Danzer, one of the complainants.

"3.    That the most valuable and desirable lots in the said addition are those on Oak Hill Avenue, and the said Mary Bitner Danzer so considering, after she became the owner of the tract, and before any of the lots on said Oak Hill Avenue were sold, determined to alter and change the conditions and restrictions as set out on said plat, as far as said Oak Hill Avenue were concerned, and to form a plan for the development of said Oak Hill Avenue, separate and distinct from the rest of the said addition, in so far as the conditions and restrictions as contained in the agreement with and deed for lot No. thirty-five (35) on said plat, to the defendant, heretofore filed as exhibits, show.

"4.    That in all of the agreements for the sale of lots on said Oak Hill Avenue, and in all of the deeds therefor, executed by Mary Bitner Danzer and William A. Danzer, the plaintiffs, the same conditions and restrictions are contained as are contained in the said agreement with and deed to the defendant, and it is the purpose and intention of the said Mary Bitner Danzer to sell no lot on said Oak Hill Avenue except subject to the same conditions and restrictions.    That

the sale of the lots. in the said addition other than those situated on said Oak Hill Avenue were made subject to the conditions and restrictions contained on the said plat.

"5.    That the following lots on Oak Hill Avenue in said 'Bitner's Addition to Oak Hill' have been improved by single residences, each costing more than $7,500.00, to wit:

"Lots Nos. 1 and 2, improved by the single residence owned and occupied by H. Holzapfel, Jr.

"Lots Nos. 3 and 4, improved by the single residence owned and occupied by J. M. Guider.

"Lots Nos. 38 and 39, improved by the single residence owned and occupied by W. G. Barnheisel.

"Lot No. 18, improved by the single residence owned by Frank L. Bentz.

"And that there are no other buildings in said Oak Hill Avenue in said Bitner addition except the building complained of and the single dwelling house now being erected by William H. Biever on lot No. 17 at a cost in excess of $7,500.00.

"6.    That none of the said conditions and restrictions have been disregarded or violated by the purchasers of any of the said lots on Oak Hill Avenue other than the alleged violation thereof by the defendant.

"7.    That some time subsequent to the 11th day of November, A. D. 1921, the defendant, by his agents and employees, began to excavate on said lot No. thirty-five (35), and while the foundation walls of the apartment house mentioned in the bill of complaint were being erected, William Danzer, one of the complainants herein, called to the defendant's attention the agreement and the restrictions therein, advising the defendant that the restrictions contained in the agreement would be enforced, and that William A. Danzer then wrote a letter to the defendant under date of December 2, 1921, and received a reply from

the defendant under date of December 3, 1921, as will appear 'from a copy of said William A. Danzer's letter and the original letter from said defendant attached thereto, marked Exhibit 'Letters.'

"8.    That the three pictures marked Exhibits P-1, P-2, and P-3 were taken on December 27th, 1921, and correctly represent the apartment house erected by the defendant on said lot number thirty-five (35) and its progress toward completion at that time.

"9.    That the said apartment house has been completed at a cost of about twenty-five thousand ($25,-000.00) dollars; that it has six separate entrances from a common hall, two entrances on each floor, and six separate and distinct gas lines and outlets, and was constructed by the defendant, according to the floor plans of the third floor attached hereto and made a part hereof, except that the first and second floors have two kitchens on each floor.

"10.    That it is at the present time occupied by five separate and distinct families, two on the first floor, two on the second floor, and one on the third floor.

"11.    That no dwelling has been erected on Hamilton Boulevard in said addition costing less than the amount specified in restrictions for that street, and that the apartment houses erected by J. Morris Guider on Hamilton Boulevard in said addition, mentioned in the answer of the defendant, each cost twelve thousand dollars ($12,000.00).

"12.    That the erection of the apartment house of the defendant is contrary to the intention of the plaintiffs' plan for the development of said Oak Hill Avenue on said addition, and that it would depreciate the value of the remaining lots in said Oak Hill Avenue belonging to the plaintiffs.

"13.    That the complainants are still seized and possessed of lots Nos. 5, 6, 7, 8, 12, 13, 14, 15, 20, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33 on said Oak

Hill Avenue, as shown on the plat of said Bitner's Addition to Oak Hill."

There were two questions decided by the lower court, viz:

*First.* Did the restrictions in the contracts and deeds prohibit the construction of apartment houses on the lots sold appellant?

*Second.* Does the word "dwelling" as used in said contracts and deed, in the fourth condition, mean, as applied to the facts of the case, *each apartment* in the building?

The learned trial judge, in a very forceful opinion, decided the first question in the negative.

As to the second, he held that the minimum cost fixed for any "dwelling" to be erected, applied to each apartment in the building, and as the cost of the building was only $25,000, and it contained six apartments, which were then occupied by five families, the condition as to cost was not complied with. He, therefore, granted a permanent injunction restraining the defendant from maintaining the apartments as erected by him on lot No. 35, and enjoining and restraining him from erecting or maintaining "any apartment or part of a building designed for the use of a single family, on the said lot, except such as shall cost at least the sum of seventy-five hundred ($7,500) dollars."

From that decree this appeal was taken.

Appellee having acquiesced in the ruling of the court on the first question, that is not now before us; so we have but a single question to consider, viz.: Does the word "dwelling," as used in said contracts and deed, mean each separate apartment in the apartment house?

It is impossible to disregard the strength of the position taken by the learned trial judge and difficult to escape the force of his logical reasoning. But our analysis of the facts and consideration of the legal principles applicable thereto lead us to a different conclusion than that reached by him. He well said that "restrictions upon the use of land, the fee

of which has been conveyed, are not favored, and their burden will be limited to what was plainly within the intent of the parties to them"; and finding no express prohibition of apartment houses in the contracts or deed, and it appearing that apartment houses had been built upon other lots in said addition, he held that it did not plainly appear to have been the intention to prohibit their erection.

Another way of expressing the principle quoted above is, that restrictions in deeds will be construed strictly against grantors and all doubts resolved in favor of grantees. With this principle in mind, we are unable to say that, beyond a reasonable doubt, the word "dwelling" in the fourth condition of the contracts and deed was intended to apply to each separate apartment, if the building should be an apartment house.

The trial judge thought it significant that while the word "building" occurs in the fourth condition on the recorded plat, "dwelling" is substituted in said condition in the contracts and deed here under consideration. But a possible explanation of that change may be found in the fact that the restrictions on the plat did not exclude churches; whereas in the said contracts and deeds only residences are permitted. In the one case "building" included both residences and churches, whereas a less inclusive term was appropriate in the other.

If it had been the intention to fix a minimum cost on each apartment it is most unlikely that such apartments would have been referred to as a "dwelling." Certainly that is not the usual or natural designation of such an abode. The language used in other deeds, where appellees were conveying lots, on which the erection of double houses was contemplated, shows that they knew how to provide definitely for such contingencies. This happened in several instances in the sale of lots on the next street; and there the condition was "that no single dwelling to cost less than $3,000, or double dwell-

ing to cost less than $4,500 shall be erected on any lot of fifty feet."

It will be noted that in such cases it was recognized that double dwellings need not cost twice as much as single. This proportionate diminution in cost would have been even more apparent if the appellees had been considering an apartment house, where one roof and one foundation would suffice for five apartments.

The plain truth seems to be that appellees had no thought of apartment houses being erected on those lots when the contracts were made. It was one of their contentions in the trial below that such buildings were excluded by the contracts and deed; and in the agreed statement of facts it is stated that "the erection of the apartment house of the defendant is contrary to the intention of the plaintiffs' plan for the development of said Oak Hill Avenue in said addition."

This would indicate that when the word "dwelling" was used by the parties to said contracts and deed, it was not meant by appellees at least to refer to an apartment.

Of course we are now considering the question of cost only, the other contention of appellees having been abandoned by them. It is expressly denied in the answer under oath, and there is no evidence, that appellant had any knowledge of the alleged plan of appellees for the development of Oak Hill Avenue. Our attention has not been called to any decision of this Court bearing upon the question at issue and we know of none. The cases cited from other jurisdictions do not help us much, because in those cases the question was, whether a condition that no building other than a dwelling house, or similar expression, should be erected on the lot sold, excluded an apartment house or other building than a single dwelling. On this question there are numerous decisions on both sides. That is not the question in this case. Nor are we required to decide what would have been the remedy of appellees if appellant had erected an apartment house at a cost, relative to the number of apartments, so far below the standard fixed

for a dwelling as to indicate bad faith or fraud. Here the cost was $25,000 for a house containing six apartments, two of which apparently were arranged for the use of a single family; so that practically there are five apartments. There is therefore exactly the same proportionate increase of cost over the minimum cost fixed by the deeds in this case for a dwelling, as was in several instances provided by appellees, in selling other lots, for the increased cost of a double house over a single.

> *Decree affirmed in part and reversed in part, and bill dismissed with costs to appellant.*