## Culp et al., Appellants, *v.* Firestone Tire & Rubber Co. et al.

Argued January 28, 1931.   Before FRAZER, C. J., WALLING, SIMPSON, KEPHART and MAXEY, JJ.

*Cyrus G. Derr,* with him *Walter B. Freed,* for appellants.—The reciprocal covenants in the deed from Frank S. Livingood to Diller B. Martin expressly made binding on the grantor and grantee, their respective heirs and assigns, and relating both to the lots conveyed and the lots retained by Mr. Livingood, properly construed, meant and mean that the parties were establishing a mutual plan for the improvement of their properties, and that only dwelling houses should be erected on the respective lots: Electric City Land Co. v. Coal Co., 187 Pa. 500; Myers's Est., 238 Pa. 195; Sacramento Nav. Co. v. Salz, 273 U. S. 326.

Under the evidence in this case, the building which the defendants propose to erect upon their property

must be regarded as a building designed in part for the housing of motor vehicles, and therefore a garage, which is a stable and forbidden by the express covenant of Mr. Livingood and Mr. Martin, in deed of March 6, 1904: Asbury v. Carroll, 54 Pa. Superior Ct. 97.

*T. I. Snyder,* of *Zieber & Snyder,* with him *Geo. B. Balmer* and *R. G. Bushong,* for appellees.—Livingood's covenant in deed to Martin does not restrict his remaining tract of ground to a use for the erection only of dwelling houses: Satterthwaite v. Gibbs, 288 Pa. 428; Gilmore v. Pub. Co., 18 Pa. Superior Ct. 363; Crofton v. St. Clement's Church, 208 Pa. 209.

Defendant's proposed structure is not a "stable" within the meaning of Livingood's covenant that no stable or stables shall be erected on the premises: Asbury v. Carroll, 54 Pa. Superior Ct. 97; Smyth v. McCarroll, 76 Pa. Superior Ct. 142.

OPINION BY MR. JUSTICE MAXEY, March 16, 1931:

This is an appeal from a dismissal of a bill in equity. The bill sought to enjoin the erection by defendants on a lot near Oley Street and Madison Avenue, Reading, Pa., of a service plant for automobiles, consisting of submerged tanks for storage, sale and delivery of gasoline and other accessories, etc., and also to enjoin the alleged diversion of a certain twenty-foot reservation on said streets to purposes not contemplated but forbidden by the covenants invoked by plaintiffs. The purpose characterized by appellant as forbidden was the placing of gasoline tanks below the surface on the reservation. The restricting covenant referred to came into being on March 26, 1904, when Frank S. Livingood, then owner of the locus in quo, conveyed to Diller B. Martin, his heirs and assigns, a certain lot situated on the southeasterly corner of East Oley Street and Madison Avenue, Reading, Pa., being 95 feet on the former street. Martin, the grantee, therein covenanted

for himself, his heirs and assigns, that no building or structure should be erected thereon within 20 feet from the south building line of Oley Street, nor within seven feet of the east building line of Madison Avenue, nor within 5 feet of the east line of the property so conveyed, excepting a tower in dwelling to be erected at the corner of Oley Street and Madison Avenue and porches might be erected on the 20 feet, from the ground upwards, and bay windows above first floors of houses to be erected upon the premises, and that only two pairs of houses should be erected on the property so conveyed, and that no stable or stables should be erected thereon. On this tract Martin erected four dwelling houses, two of which are now owned by plaintiffs. Herbert R. Culp, plaintiff, owns and occupies the property at No. 440 Oley Street, adjoining defendants' property, and Sarah E. Weitzel, plaintiff, owns the property at 438 Oley Street, adjoining the Culp property.

In the same deed, Frank S. Livingood, the grantor, covenanted for himself, his heirs and assigns, that no building or structure should be erected on the property retained by him on the southwest corner of North Fifth and Oley Streets, 100 feet on the former street and 125 feet on the latter street, within 20 feet from the south building line of Oley Street nor within five feet of the east line of the property conveyed to Diller B. Martin, excepting a tower in dwelling to be erected at corner of Oley Street and North Fifth Street, and porches on houses, which porches may be erected within the 20 feet from the ground upwards, and bay windows may be projected above the first floors, and that no stable or stables should be erected on the premises so retained, and that no stable or stables should be erected on the south side of Oley Street and west of Madison Avenue, the grantor also owning property on the west of the avenue, it being also covenanted that bay windows

might be projected within the 7-foot reservation on Madison Avenue, and also with the 5-foot reservation.

The defendants now own the property so retained by Frank S. Livingood and so restricted in the deed of March 26, 1904. The first question is whether the erection by defendants of service plant and tanks violates the covenant and restrictions. The learned chancellor of the court below aptly and correctly stated in reference to the covenant: "This is not a specific provision that only a dwelling or dwellings may be erected; the subject-matter of the covenant is the establishment of the twenty-foot 'reservation' or reserve line back of the regularly established building line, and the provision that no structure other than 'tower in dwelling' and 'porches on houses' may encroach upon that reserved area. Aside from the prohibition against stables, there is no covenant as to the character of the building or buildings that may be erected within the reserve lines. There is no limitation in the use of the lot to dwelling or dwellings. We cannot construe the phrase 'tower in dwelling' as a stipulation that dwellings and nothing else may be erected on the tract. That phrase and its context amounts to no more than leave to erect a tower which would encroach upon the reserved area at the corner of the two streets, provided such tower be part of a dwelling. And so it is with the clause relating to porches: they may extend beyond the reserve line if they be 'porches on houses.' If the argument be sound that the phrase 'tower in building' is a covenant that only dwellings be erected on the lot, then the phrase 'porches on houses' should be construed as meaning that only houses may be erected...... We believe that the covenant does not limit the structures that may be erected upon the land to either dwellings or houses, but merely provides that, if dwellings or houses be erected, they may have a certain deviation from the otherwise firmly established reserve line. Reservations upon the use of land are never favored by the law; hence it fol-

lows that such provisions are never to be extended by implication: De Sano v. Earle, 273 Pa. 265, 270. 'Covenants restricting the use of land are construed most strictly against one claiming their benefit and in favor of free and unrestricted use of the property; a violation of the covenant occurs only when there is a plain disregard of the limitations imposed by its express words. ...... It does not extend to limitations arising by implication: Taylor v. Lambert, 279 Pa. 514; St. Andrew's Lutheran Church's App., 67 Pa. 512; Francis v. Dean, 80 Pa. Superior Ct. 108'; Satterthwait v. Gibbs, 288 Pa. 428, 431.''

Plaintiff also earnestly contends that the provision against the erection of stables in the covenant precludes the erection of a garage or building for the service of automobiles such as the defendants plan to erect. In Webster's International Dictionary, "stable" is defined as "a house, shed, or building for beasts to lodge and feed in." While the word "beast" sometimes has a wider connotation, it ordinarily refers to quadrupeds. "Garage" is defined in Webster's Dictionary as "a place for housing automobiles." A garage is no more a stable than a railroad roundhouse is a corral. A garage does not possess the offensive attributes of a stable, but, even if it did, that fact would not warrant the judicial construction of the word "stable" as including a garage. It is no more a garage than it is a hangar. One of the penalties people must pay for being gregarious is that of putting up with annoyances to acute sensibilities. Quiet country or suburban roads of twenty-five years ago have now become parts of main highways of motor traffic, and the somnolent chirp of the cricket is now drowned by the insomnolent honk of the motor horn. All this is distressing to those who love the soothing quiet of old time rural or suburban life, but personal annoyances or inconvenience have never long been able to stay the march of industrial progress. In all residential parts of cities garages now dominate

back-yard landscapes. Most people find no offense in them. Apparently they are here to stay. In any event, there is nothing in the covenant invoked by the appellant which makes them structural outcasts on the lot in question.

The decree dismissing the bill was well founded in law and in fact. The decree is affirmed and the appeal is dismissed at the costs of the appellants.