## WILLIAM E. FERGUSON v. BETH-MARY STEEL CORPORATION.

[No. 46, January Term, 1934.]

Decided April 25th, 1934.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*C. Alex. Fairbank, Jr.,* for the appellant.

*George Weems Williams* and *Boyd R. Graham,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

William E. Ferguson, the appellant, is a citizen and resident of Baltimore City. By an agreement dated November

21st, 1933, between him and the appellee, the appellant agreed to buy and the appellee agreed to sell a tract, piece, or parcel of land situate, lying, and being in Baltimore County, particularly described by courses and distances, and containing one acre of land, more or less. By the terms of the agreement, the conveyance of the land covered by the agreement was to be made within ten days of its date, otherwise the agreement to become null and void, at the option of the seller. The purchase price was $5,000, upon receipt of which in full, at any time during the term of the agreement, the seller agreed to convey said land in fee simple to the purchaser, his heirs and assigns, with a good and marketable title, subject, however, only to the following restrictions, provisions, conditions, and reservations, to be set out in the deed and held to run with the land in favor of the seller, its successors and assigns, and to be binding upon the purchaser, his heirs and assigns, his and each of his lessees and tenants, sublessees or subtenants, as part of the consideration for the conveyance. There then follow certain reservations, provisions, conditions, and restrictions, which it is conceded by the parties are not involved in the question now presented.

The one acre, which is the subject of the contract of sale, is a portion of a larger tract of land containing 117 acres and a fraction, which by deed dated March 10th, 1925, was conveyed to the appellee by the Dundalk Company, a corporation. The relations between the Dundalk Company and the Beth-Mary Steel Corporation, the appellee, were very close. One was a subsidiary of the other; and the witness Stingley, at the time of the deed of March, 1925, was vice-president of the Dundalk Company, and superintendent of real estate of the appellee. He had general supervision of the arrangements between the two companies which culminated in the execution of that deed. Mr. Stingley, after having had read to him the language contained in the first paragraph of restrictions appearing in the deed from the Dundalk Company to the appellee, of March, 1925, was asked:

"Now, as agent of the Dundalk Company were you famil-

iar with the deed from the Dundalk Company to Beth-Mary, and particularly with the language that I just read you? A. Yes, sir. Q. Was it the intention of the Dundalk Company by the use of this language that I just read you, taken from the deed of March 10, 1925, to subject all of the land conveyed therein to the Sparks restrictions or to the restrictions set forth in the deed from the Eastern Land Company to Benjamin I. Sparks and wife? A. No, sir. Q. What was the purpose? A. The purpose was to refer to the restrictions contained in the two deeds from Sparks and wife, and the Eastern Land Company to Sparks. Q. Then am I to understand that it was not the intent of the Dundalk Company to create new restrictions which could be enforced by the Dundalk Company? A. No, no intention whatsoever. Q. Was it the intent of the Beth-Mary Steel Corporation to create new restrictions? A. No, sir. Q. In other words, Mr. Stingley, it is just simply a reference to the covenants affecting certain definite portions of the land conveyed? A. Yes, sir. Q. And to simply call attention to those covenants? A. Yes, sir. Q. And not to apply those covenants to all of the whole tract? A. That is right, sir."

On cross-examination this witness testified: "Q. Subsequent to the deed of 1925 and subsequent to the re-acquiring of portions of the property described in the deed of 1925, had you made any conveyances of any portion of your general holding down there in which you have restricted the land so sold against its use for distillery purposes? A. You are talking about Dundalk? Q. Yes. A. We have; yes, sir. In the residential section, we, of course, put general restrictions on, that includes distilleries and selling of liquors. Q. Do I understand you to say that you have approximately divided up your entire holding, and some portion you dedicated or set aside for dwelling purposes and others for business purposes? A. That is correct. Q. Do you mean to say that only as to the portion which you have set aside for dwelling purposes that you recorded restrictions which would prohibit use for distillery purposes? A. That is correct.

The Court: And this piece of property is not in that section?
Q. (By Mr. Fairbank): This one acre of land, more or less,
contracted to be sold to Ferguson, what particular section of
your entire hold is that located in, that is whether it is
located in the residential section or the section devoted or
set aside for business? A. That is located on the Baltimore
& Ohio Railroad dedicated for industrial purposes."

The Dundalk Company was the owner of a large tract of
800 or 900 acres in the general vicinity of Dundalk, which
it had acquired from several different grantors. A portion
of this large holding was the land mentioned and described
in a deed dated November 29th, 1913, from John W. Sparks
to Benjamin I. Sparks, containing ninety-three acres, more
or less. The habendum clause of this deed contained this
language: "To have and to hold the lot of ground above
described, unto and to the use of the said Benjamin I. Sparks,
his heirs and assigns, in fee simple, forever, subject however
to the following condition, which is hereby entered into by
the party of the second part for himself, his heirs and as-
signs, with the said John W. Sparks, his heirs and assigns,
as a part of the consideration for this deed; that at no time
shall any part of said land be used or occupied for the manu-
facture, brewing, distilling or the sale of spirituous or malt
liquors, nor shall the lots or any part thereof, or any building
erected thereon, or any part thereof, at any time hereafter,
be used or occupied as a drinking saloon."

Another portion of the large holding of the Dundalk Com-
pany was mentioned and described in a deed from the Eastern
Land Company to Benjamin I. Sparks dated April 7th,
1917, conveying one acre of land, more or less. This deed
contains certain restrictions, covenants, and agreements be-
tween the parties to the deed, and binding their heirs, suc-
cessors, and assigns, as a part of the consideration for the
conveyance. Among these covenants and restrictions are:
That the premises conveyed shall be used and occupied for
residence purposes only, and not otherwise; that no nuisance
of any kind shall be maintained or allowed thereon, or any

use thereof made or permitted which shall be noxious or dangerous to health; and that the grantor agrees that restrictions will be imposed upon property lying within a block of the tract of land hereby conveyed, prohibiting the location thereon of any saloon, manufacturing establishment, or business shops.

The record discloses that within the boundaries of the ninety-three acre tract of land which was conveyed by the Dundalk Company to the appellee there is included a small tract, possibly five or six acres, of the Benjamin I. Sparks land, which he had obtained from John W. Sparks by the deed of November 29th, 1913, and also a very small portion of land which was located within a block of the one acre tract obtained by Benjamin I. Sparks from the Eastern Land Company by deed of April 7th, 1917; that the one acre of land sold to the appellant is a distance of approximately 2,500 feet from the portions of land upon which were imposed restrictions heretofore mentioned in the deeds to Benjamin I. Sparks, and Benjamin I. Sparks and wife; that the deed from the Dundalk Company to the appellee, which included the one acre mentioned in the contract of sale to the appellant, contains the following language: "The lands herein conveyed are subject, however, as follows: (1) To the covenants and agreements, restrictions and conditions contained in two certain deeds, one thereof being from John W. Sparks and Mary M. Sparks, his wife, to Benjamin I. Sparks, dated November 29, 1913, and recorded among the Land Records of Baltimore County in Liber W. P. C. No. 421, folio 185, the other being from the Eastern Land Company to Benjamin I. Sparks and Leah Z. Merritt Sparks, his wife, dated April 7th, 1917, and recorded among said Land Records in Liber W. P. C. No. 478, folio 340. * * * (3) To all the exceptions, reservations, covenants and conditions contained in the several conveyances whereby Dundalk acquired title to the above described lands as the same appear of record as hereinbefore set forth, and which exceptions, reservations, covenants and conditions are not specifically hereinbefore mentioned and

set forth"; the habendum clause in said deed being: "To have and to hold said lands, premises and hereditaments with the appurtenances thereto, hereby granted and conveyed, or intended so to be, unto the grantee, its successors and assigns, to and for its and their only proper use and behoof forever; subject, however, in so far as affected thereby, to the aforesaid rights of others and encumbrances, if any"; that the appellant is ready and willing to pay for and accept a conveyance of the land mentioned in the contract of sale, provided there are no restrictions preventing the erection and operation of a distillery upon that land, for which purpose it is shown and conceded the appellant desired the use and ownership of the lot, he contending that there may be such a restriction applicable to the said lot, and for this reason alone he refuses to accept the conveyance and pay for the same. This attitude of the appellant resulted in the filing of a bill in the Circuit Court of Baltimore City praying a decree of specific performance of the contract of sale. The case was heard upon bill, answer, exhibits, and testimony taken in open court. The chancellor, on December 28th, 1933, decreed specific performance of the contract. The appeal is from that decree.

From a recital of the facts, all of which are undisputed, the issue to be determined is the single question of whether or not the restrictions mentioned in the deed from the Dundalk Company to the appellee apply only to those portions of the one hundred and seventeen acre tract, being a statement of an existing fact that such restrictions did exist upon those small portions which had previously been part of the Sparks property and the Eastern Land Company property, for the purpose of informing those subsequently dealing with this land that such small portions were subject to those restrictions, or whether by that deed those restrictions were extended to the whole of the one hundred and seventeen acre tract. There is no case which we have found, or been referred to, wherein the facts are identical or even similar to those here presented, so that the question is resolved into

one of construction. There are, however, laid down in previous decisions of this court certain canons of construction to be applied in reaching a correct interpretation and conclusion, among which are:

That a sound public policy favors the free and unrestricted use of land by the legal holder, and therefore alleged restrictive covenants should be construed strictly against the establishment and effect of such covenants, and liberally in support of the free use of the land. It is stated in a recent case, *Himmel v. Hendler,* 161 Md. 181, 155 A. 316, 319; "Therefore, one of the cardinal canons of construction when dealing with such covenants is to construe them strictly against the person in whose favor they are made, and liberally in favor of the freedom of the land. A violation of the covenant occurs only when there is a plain disregard of the limitation imposed by its express words. So, also, when the words used are as logically susceptible of a construction which would not violate the covenant, as of one which would violate it, the rule is to construe it so as not to constitute a violation. *Wood v. Stehrer,* 119 Md. 149, 86 A. 128; *Saratoga Corp. v. Stables Co.,* 146 Md. 152, at page 158, 128 A. 270; *Meredith v. Danzer,* 142 Md. 582, 121 A. 245; *Peabody Heights Co. v. Willson,* 82 Md. 186, 32 A. 386, 1077; *Beetem v. Garrison,* 129 Md. 665, 99 A. 897; *Bealmear v. Tippett,* 145 Md. 569, 125 A. 806; *Sowers v. Church of Holy Nativity,* 149 Md. 434, 131 A. 785; *Culp v. Firestone Co.,* 303 Pa. 257, 154 A. 479; *Downen v. Rayburn,* 214 Ill. 342, 73 N. E. 364; *Bartell v. Senger,* 160 Md. 685, 155 A. 174."

In *Clem v. Valentine,* 155 Md. 19, 141 A. 710, 713, it was said: "As a result of the examination of the many cases involving this question, and the reasons which the courts have assigned for reaching their conclusions, we are of the opinion that the application for relief in such cases is addressed largely to the conscience of the court and is governed by equitable principles; that if the language of the covenant, the respective positions of the parties, and the surrounding circumstances, taken singly or together, show that the covenant was

entered into for the benefit of the land retained by the covenantee, creating an equity or right appurtenant to the land, to be exercised by such person as for the time being is the owner thereof, it will be enforced without regard to whether the covenant does or does not run with the land, or whether or not it is a general scheme or plan of development of the property in question."

That the duty of the court is to ascertain and give effect to the intention of the parties as manifested by the terms of the entire instrument. *Mitchell v. Packham,* 103 Md. 693, at page 694, 63 A. 219.

That, in ascertaining such intention, the court may and should consider the circumstances and conditions surrounding the parties at the time of the execution of the instrument, their relationship one to the other, as well as the actual words used. *Wehr v. Roland Park Co.,* 143 Md. 384, at page 392, 122 A. 363; *Berry on Restrictions,* p. 65. To this principle all technical considerations must yield, and the manifest intention of the parties be made effective unless it contravenes a settled public policy or a positive rule of law or property. *Bartell v. Senger, supra.*

When we apply the rules of construction applicable to such cases, we have no doubt of the correctness of the conclusion reached by the chancellor, and must affirm the decree appealed from.

The restriction contended for, or at least feared to be in existence, by the appellant upon the land mentioned in the contract, is contained in the deed of March 10th, 1925, from the Dundalk Company to the appellee. As stated, the relationship of these two corporations at the date of that deed was that of affiliates, or one being subsidiary of the other, the management of the real estate held by both, previously and at that time, being conducted by the same individual. There does not seem to be any apparent reason, or that it would be logical, that such restrictions, as claimed by the appellant, would be imposed by the Dundalk Company when conveying

the land to its affiliate company, as such act would be placing an incumbrance upon the land which might very seriously injure its future sale, with no benefit which could not be readily attained by inserting the restrictions in the deed for the land or portions thereof, when conveyed to strangers. Again the habendum clause provides: "Subject however, in so far as affected thereby, to the aforesaid rights of others and incumbrances, if any."

These form a logical basis for the conclusion that the intention of the parties was not to extend the restriction to any new land, but to point out that those restrictions did apply to small portions of the one hundred and seventeen acre tract then being conveyed, namely, that known as the Sparks land and that acquired from the Eastern Land Company.

The quoted testimony of the witness Stingley was not objected to, and is evidence binding upon the parties to this appeal, and for the purposes of this case unmistakably shows the intention of the parties to the deed of March 10th, 1925, from the Dundalk Company to the appellee. But disregarding this testimony, and examining the contract of sale and the deeds contained in the record, we are satisfied that the documentary proof shows that the intention of the parties, by the use of the language employed in the restrictive covenants of the deed of March 10th, 1925, was merely to give notice to the public subsequently dealing with the whole tract that certain small portions thereof were incumbered by the restrictions referred, and not to place for the first time those restrictions upon the whole tract.

Again, if, upon a consideration of the whole record, the relation of the parties, and the circumstances surrounding the creation of the alleged restriction, our minds were left in equal balance on the point, the same conclusion would be compelled by the application of the settled rule of construction which requires liberality in favor of the freedom of the land.

*Decree affirmed, with costs to the appellee.*