## CLEVELAND R. BEALMEAR ET AL. *vs.* RICHARD B. TIPPETT, COMMITTEE.

*Restrictive Covenants—Right to Enforce—General Plan of Improvement.*

In order that grantees of property may be able to enforce restrictive covenants in deeds of neighboring property, an intention that the covenants shall bind all portions of the land must appear from the terms of the deeds, or by satisfactory proof of a uniform plan of development.                              p. 571

No such intention appears from a deed which contains covenants restrictive of the use of the land conveyed, but which does not provide that the restrictions shall bind the grantor's remaining land or that they shall apply to property other than that granted, the covenants by the grantor being strictly individual, without mention of his assigns.                    p. 571

Restrictive covenants in favor of the grantor of land, who subsequently divests himself of all interest in neighboring property, cannot be enforced by his heirs after his death.        p. 571

A grantor of land, who retains no interest in neighboring land, cannot enforce restrictive covenants in the deed as to the land conveyed.                                         p. 571

The fact that some of the deeds for a part of a tract of land contained restrictive covenants like those provided by deeds for lots in the other part, made by the owner of the whole, is not in itself a sufficient indication that the covenants were intended to be reciprocally enforceable by the respective grantees.                                          pp. 571, 572

That the deed of the northern part of a tract of land provided for restrictions similar to those specified for lots contained in the southern part did not show a uniform plan for the development of both parts, so as to entitle the holders of lots in the southern part to enforce restrictive covenants in the deeds for the northern part, the southern part having been subdivided into lots sold for ordinary residence purposes, while

the northern part was not subdivided but was conveyed as a whole, to be used as an orphan asylum, contrary to one of the restrictions, the grantor simultaneously agreeing that the use of the land should not be subject to those limitations, and every deed imposing restrictions permitting changes of plan as to the use and improvement of any lot, by agreement of the grantor with its owner.                                                    p. 572

The grantees of lots could not enforce restrictions covenanted in deeds for other land purchased from the same grantor, unless there was a general plan of improvement adopted for the whole tract of which their lots had formed a part, and their purchases were made and their deeds accepted in reliance upon the execution of such a design.                                  p. 573

*Decided April 10th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Exceptions by Cleveland R. Bealmear and Samuel R. Boyd to the ratification of a sale made to them by Richard B. Tippett, committee of Rose Leach, a lunatic. From an order overruling said exceptions and ratifying the sale, said purchasers appeal. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*C. Alex. Fairbank, Jr.,* submitting on brief, for the appellants.

*Richard B. Tippett,* for the appellee.

URNER, J., delivered the opinion of the Court.

The question raised by exceptions to the ratification of the sale reported in this case is whether the real estate proposed to be conveyed to the purchasers is subject to certain restrictive covenants. The sale was made under an agreement which provided for the release of the purchasers in the event of a

judicial determination. that the land is not free of such re-
strictions. The property consists of a tract of land containing
about sixteen acres situated on the north side of Liberty Lawn
Avenue and the west side of Garrison Avenue in the suburbs
of Baltimore. It was sold to the appellants by the appellee, as
committee of Rose Leach, who acquired title on April 10,
1919, from St. Raphael's Institute of Providence. The deed
to Miss Leach contained restrictive covenants which had also
been included in a deed to the Institute from George R.
Webb and wife, dated May 16, 1918, and which were to be-
come operative if the land was subdivided into lots, and then
only until January 1st, 1930. The land had been conveyed
to Mr. Webb from the Forest Park Company by two deeds,
one executed on November 6, 1908, and the other on May
16, 1916, in neither of which were there any restrictive pro-
visions.

On the south side of Liberty Lawn Avenue, opposite the
land sold in this proceeding, are numerous improved building
lots. These were originally included, with the land now in
question, in a tract of nearly fifty acres which was conveyed
by George R. Webb and wife, in 1905, to the Forest Park
Company. The lots to the south of Liberty Lawn Avenue
were platted by the company and were conveyed by it to
various purchasers subject to restrictions similar in terms
and duration to those mentioned in the deeds from St.
Raphael's Institute to Miss Leach and from Mr. Webb and
wife to the Institute. Every covenant for such restrictions
was on the part of the grantor alone and the "grantee, his
heirs and assigns." It was declared to run with the land
conveyed, but the grantor did not covenant that the use of the
remaining land should be similarly restricted. In each deed
containing restrictive covenants there was a provision that
they were subject to "be at any time in any manner changed
with respect to the whole of the said property or any of the
lots into which it may be divided * * * with the mutual
written consent of the said grantors, their heirs or personal
representatives and the owner or owners for the time being
of the land to be affected by such change." The Forest Park

Company parted with its title to every portion of the original tract referred to, and its corporate existence has been ended by a decree of dissolution. Simultaneously with his convey- ance to St. Raphael's Institute of Providence, Mr. Webb agreed in writing to indemnify it against any claim of "pur- chasers of the Forest Park lots" that the restrictions provided in their deeds should apply also to the property which the Institute had purchased. The agreement stated that the re- strictions covenanted in those deeds applied only to the lots thereby conveyed.

The essential inquiry is whether there is any existing in- terest on behalf of which the restrictive covenants we have mentioned can be enforced in regard to the property with which we are concerned in this case. In order to answer that inquiry in the affirmative we should have to discover in the terms of the deeds, or in satisfactory proof of a uniform plan of development, an intention that the covenants should bind all portions of the land. *Beetem* v. *Garrison,* 129 Md. 664. The provisions of the deeds failed to reveal such a purpose. They omit any agreement that the restrictions should bind the grantor's remaining land, or should apply to property other than that granted in each instance, and the covenants on the part of the grantor, in every deed, are strictly individual. *Safe Deposit Company* v. *Flaherty,* 91 Md. 489; *Wood* v. *Stehrer,* 119 Md. 143; *Lowes* v. *Carter,* 124 Md. 678.

There is no common grantor capable of enforcing the re- strictions for the benefit of any interest. The Forest Park Company has been dissolved, and Mr. Webb, its predecessor in title and the succeeding owner and grantor of the northern portion of the land, has died, after having divested himself of all his interest in the property. St. Raphael's Institute of Providence, by its conveyance to Miss Leach, terminated its interest in the title now under investigation. Consequently no right of enforcement against the present owner of the northern tract exists under the terms of any of the deeds by which it has been transferred. *Foreman* v. *Sadler's Execu- tors,* 114 Md. 574; *Boyd* v. *Park Realty Company,* 137 Md. 36. The fact that some of the deeds for the tract north of

Liberty Lawn Avenue include restrictions like those provided by the deeds for lots to the south of the avenue is not a sufficient indication that the covenants were intended to be reciprocally enforceable by the respective grantees. *Boyd* v. *Park Realty Company, supra; Ringgold* v. *Denhardt,* 136 Md. 136; *Summers* v. *Beeler,* 90 Md. 474.

There is no satisfactory proof of any such uniformity of plan for the development of the lands on the north and south sides of Liberty Lawn Avenue as to entitle the southern lot-holders to enforce the restrictive covenants of the deeds for the land to the north of the dividing thoroughfare. The disposition of the northern area was not in conformity with the plan of development for the part of the tract lying to the south. That portion was subdivided into lots which were sold and used for ordinary residence purposes, while there was no such subdivision of the sixteen acre tract to the north, and it was conveyed to St. Raphael's Institute of Providence to be used, contrary to one of the restrictions, for its corporate purpose of maintaining an Orphan Asylum. While the deed to the Institute provided for restrictions like those specified for the lots south of the avenue, yet its grantor simultaneously agreed in writing that the use of the land he was then conveying should not be subject to those limitations. This was in effect an exercise of the right of modification which the deed reserved. In view of the fact that every deed imposing restrictions contains such a reservation, which permits changes of plan as to the improvement and use of any lot by agreement of the grantor with its owner, it can hardly be said that a definite and uniform plan of development of the remaining land was assured to the grantee in any deed.

It was provided in the deeds from Mr. Webb to St. Raphael's Institute of Providence, and in its deed to Miss Leach, that if the land thereby conveyed should be subdivided into lots, "the roads, avenues, streets or alleys and pavements, curbing and gutters shall be laid out, opened, graded, macadamized, paved and constructed to conform with the construction, workmanship and material, and with the lines and dimensions of the roads, avenues, streets or alleys and pave-

ments, curbing and gutters as now laid out and constructed
on the adjoining land of the Forest Park Company * * *."
This provision is said to show a uniform design for the devel-
opment of the tracts on both sides of Liberty Lawn Avenue.
There was uniformity also in the other restrictive provisions,
but, as applicable to the land in litigation, they were to be
effective only in the event of its subdivision into lots prior
to 1930. Even if that event occurred, the restrictions were
subject to modification by agreement of the owner and the
grantor, or his successors, without reference to any other
property interests, and they were actually so modified, as
already noted.

The grantees of the other lots could not enforce the re-
strictions covenanted in the deeds for the land purchased by
the appellant unless there was a general plan of improvement
adopted for the whole tract of which their lots had formed a
part, and their purchases were made and their deeds accepted
in reliance upon the execution of such a design. *Boyd* v.
*Park Realty Company, Ringgold* v. *Denhardt, Summers* v.
*Beeler, supra.* In this case no purpose was manifested by
the common grantor that the northern and southern portions
of the original tract should be developed according to a uni-
form plan. The use for which the land north of the avenue
was conveyed, without subdivision, differed greatly from the
purposes for which the other land was subdivided, developed
and sold. The contractual and other conditions proved in
the case do not support the theory of a general and uniform
plan upon which the right of the other grantees to enforce
the covenants of the deeds for the land involved in this pro-
ceeding might be asserted.

The record shows that Mr. Webb, the grantee, who first
provided for restrictions on the northern part of the land,
was owner of nearly all of the capital stock of the Forest
Park Company, which granted the southern lots subject to
similar restrictions, and his control of the company is said
to indicate a community of purpose in reference to the en-
tire development. It is not necessary to determine how far

that consideration is material, since our view of the case would be the same if the Forest Park Company itself had made the conveyance by which the present owner's title was vested.

Reference is made in the record to violations of the restrictions imposed upon the lots south of Liberty Lawn Avenue; and a decision that they were unenforceable against the purchasers of lots in that area is said to have been rendered by Circuit Court No. 2 of Baltimore City. It is not our duty to express in this case any opinion as to the rights of the owners of such lots to enforce the restrictive covenants among themselves, and we decide only that they were not entitled to enforce the restrictions against the land which is the subject of the sale reported in this case, and that the exceptions to the ratification of the sale were properly overruled.

*Order affirmed, with costs.*