# SARATOGA BUILDING AND LAND CORPORATION *vs.* ROLAND PARK APARTMENT STABLES COMPANY.

*Restrictive   Covenants—Residence   Purposes—Apartments.*

On an issue as to the right to construct an apartment house on a lot in a suburban development, the fact that the prior conveyance by the development company of a neighboring lot, as well as of the lot in question, expressly permitted the lots to be used for stables, and the actual use of neighboring lots in the development for railway, business, apartment house, and stable purposes, showed that the erection of an apartment house, of suitable cost, on the lot in question, did not involve a violation of the plan of residential development to which other lots in the development were uniformly subject.          p. 157

Restrictive covenants should be given no greater effect than their terms clearly intend, and any doubt as to their meaning should be resolved in favor of the grantee.          p. 158

In construing a covenant restrictive of the use of a lot in a suburban development to residence purposes and, in the alterna-

tive, to use for stables, *held* that the location of the lot, in close proximity to non-residential structures, and its actual use in the past, and its continued availability in the future, for the maintenance of stables, consistently with the terms of the deed by which it was granted, were facts justifying a liberal interpretation of the covenant, and the words "residence purposes" included the erection of a residential apartment house.   p. 158

*Decided June 20th, 1924.*

Appeal from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Bill by the Roland Park Apartment Stables Company against the Saratoga Building and Land Corporation. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was submitted on briefs to PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*C. Alex. Fairbank, Jr.,* for the appellant.

*Semmes, Bowen & Semmes,* for the appellee.

URNER, J., delivered the opinion of the Court.

The Roland Park Company of Baltimore City, on December 1, 1920, conveyed to the Roland Park Apartment Stables Company of Baltimore County a lot of ground containing about one and one-half acres and forming a part of the land which the grantor corporation had acquired for the purposes of suburban improvement. The deed conveying the lot referred to contains certain covenants restricting its use, among which are the following:

"1.   That no shop, store, factory, saloon, business house of any kind, other than stables, no hospital, asylum or institution of like or kindred nature, and no charitable institution shall be erected or maintained on said premises, but the said premises shall be occupied and used by the said Roland Park Apartment Stables Company, its successors and assigns, including all tenants, either for stables or for residence purposes and not otherwise.

"2.   That no residence or dwelling house shall be erected or kept on said land costing less than three thousand (3,000.00) dollars, and any building erected on said land within ten (10) years from date of this deed, shall be built according to plans which shall have been approved by the architect of the said Roland Park Company of Baltimore City."

The lot thus conveyed has not been used for residence purposes, but stables and public garages have been maintained on it for many years.   Recently the Roland Park Apartment Stables Company contracted to sell and convey a portion of the lot to the Saratoga Building and Land Corporation under an agreement which provided that the title should be "free of any building restriction that would prohibit the erection thereon of an apartment house to be designed and occupied for residential purposes."   Because of doubt as to the ability of the vendor to convey a title free of such a restriction, the vendee has refused compliance with the contract of purchase. In this suit for specific performance the only question is whether an objection to the title on that ground is sustainable.   The appeal is from a decree requiring the agreement of purchase to be specifically performed.

PLAT SHOWING
USES OF PROPERTY IN THE VICINITY OF R. P. APMT. STABLES CO. LOT

On the plat herewith reproduced the lot here in question is designated as Lot 1, Block 9, Plat 2, fronting 370 feet on Woodside Road and 123 feet on Upland Road. It is in a section of the Roland Park area which has been devoted in part to other than residence purposes. At the southwest corner of the same block is the stable of the Baltimore Country Club, erected under the permissive terms of the conveyance made to it in 1906. On the opposite side of Woodside Road is a car barn of the United Railways and Electric Company. The entire block on which it stands, and which is almost wholly used for railroad purposes, was conveyed to the Railways and Electric Company by the Roland Park Company prior to the execution in 1900 of the deed to the Roland Park Apartment Stables Company for the lot now in controversy. Prior to that time also the Roland Park Company itself had erected on Block 21, shown on the plat, a large business building, three stories in height, with five stores on the first floor and with residential apartments on the second and third floors, and subsequently it built a three-story brick apartment house on the same block, containing six separate five-room apartments. The portion of the Roland Park Apartment Stables Company's lot which is not included in the contract of sale now sought to be enforced is occupied by large concrete buildings which have been used for a long period of time as a public garage and an automobile repair shop. The cost of the apartment house proposed to be built by the purchaser on the lot with which we are here concerned will not be less than $3,000 for each apartment, and the building will be used for residential purposes exclusively. In the deeds for practically all of the properties conveyed by the Roland Park Company, other than those to which we have specially referred, there are restrictive covenants which include the following:

"(1) That no shop, store, factory, saloon, or business house of any kind, no hospital, asylum or institution of like or kindred nature, and no charitable institution, shall be erected or maintained on the premises conveyed, but the same premises shall be occu-

pied and used for residence purposes only, and not
otherwise.    (2) That there shall not at any time be
more than one residence or dwelling house on the land
hereby conveyed."

There is an agreement in the record as to the facts we have
stated.    In our judgment the court below correctly decided
that the proposed erection of an apartment house on the lot
mentioned in the bill of complaint is not prohibited by the
restrictive covenants as to its use, and is not contrary to the
general plan of improvement of the area in which it is in-
cluded.    There is a material difference between the restric-
tions imposed upon lots in the exclusively residential areas of
Roland Park and those specified in the deed for the ground
to which this suit relates.    The deeds for lots of the former
class uniformly covenanted that they should be used for resi-
dence purposes only and that at no time should there be more
than one residence or dwelling on the lot conveyed, while in
the deed to the Roland Park Apartment Stables Company
there was no limitation upon the number of buildings to be
erected on the lot and its use solely for stable purposes was
expressly permitted.    Since 1900 no purchase of a Roland
Park lot as the site of a private dwelling could have been
made in the belief that all portions of the land included in
the development were to be improved according to a uniform
plan.    The prior conveyance and the actual use of lots, in
the section shown by the accompanying plat, for railway,
business, apartment house and stable purposes prevented
such an expectation.    There is no sufficient ground for a con-
clusion that the erection of an apartment house of suitable
cost on the land affected by this suit should be forbidden as a
violation of the plan of residential development to which
other lots in Roland Park are uniformly subject.    The ques-
tion as to whether an apartment house may rightfully be
erected on the land must, therefore, be determined with sole
reference to the terms of the restrictive covenants in the deed
by which it was conveyed to the present owner.    *Beetem* v.
*Garrison,* 129 Md. 664; *Bealmear* v. *Tippett,* 145 Md. 568

A rule of construction applicable to such covenants is that they should be given no greater effect than their terms clearly intend, and any doubt as to their meaning should be resolved in favor of the grantee. *Meredith* v. *Danzer,* 142 Md. 582; *Wood* v. *Stehrer,* 119 Md. 143; *Peabody Heights Company* v. *Willson,* 82 Md. 186.

It was designed that the land in the immediate vicinity of the lot to which the covenants apply should be largely available for commercial uses, and the limitation of the particular lot to use for residence purposes, as an alternative to the erection of stables, must be construed with due regard to the nature of the authorized use of the adjacent properties. The location of the plaintiff's lot, in close proximity to the non-residential structures we have mentioned, and its actual use in the past, and its continued availability in the future, for the maintenance of stables, consistently with the terms of the deed by which it was granted, are facts justifying a liberal interpretation of the covenant in regard to the nature of the residence use which it intended to permit. The words "residence purposes" are susceptible of being construed as including the erection of a residential apartment house, and in view of the conditions shown by the record, we think such a construction is reasonable and should be adopted. As our conclusion is based upon the special facts of this case, we shall not undertake a discussion of the cases, cited in the briefs, in which the applicability of restrictive covenants under materially different conditions has been considered.

*Decree affirmed, with costs.*