## C. DAMER McKENRICK *v.* SAVINGS BANK OF BALTIMORE

[No. 30, January Term, 1938.]

*Decided March 10th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*C. Damer McKenrick,* with whom were *J. Kemp Bartlett* and *Bartlett, Poe & Claggett,* on the brief, for the appellant.

*William L. Rawls* and *Jesse Slingluff, Jr.,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

By their agreement in writing of September 1st, 1937, the Savings Bank of Baltimore sold, and C. Damer Mc-Kenrick bought, a lot of ground, 100 by 160 feet, at the southeast corner of the Reisterstown Road and Slade Avenue in Baltimore County for $3,000. Under the agreement the vendor agreed to convey the property by a "good and merchantable, fee simple title," upon the payment in full of the purchase price. It was also agreed that time was to be "of the essence" of the contract and that settlement should be made "within a reasonable time

* * * and before September 15th, 1937." The vendor tendered itself ready able and willing to complete the contract by conveying the property, but the vendee refused to pay the price or accept the deed on the ground that the vendor was unable to convey a good and merchantable title because, he said, the land was incumbered by certain restrictions imposed by Ida Grace Parrish and Mary Laura Busey, who formerly owned it, as part of a general plan or scheme of development affecting not only the lot which is the subject of this suit but other land of which that lot was a part, which Mrs. Parrish and her sister Mary Laura Busey then owned.

The vendor then filed the bill in this case to compel the vendee to specifically perform his contract. An answer was filed setting up the defense indicated above, testimony was taken, exhibits filed, the parties heard, and at the conclusion of the hearing the court granted the relief prayed. From that decree the vendee appealed.

It is undisputed that, apart from the supposed restrictions, the vendor is ready, able, and willing to convey the land to the vendee by a good and merchantable title. It is settled law that restrictions which limit the use which an owner may make of his land are incumbrances which are inconsistent with an absolute and unfettered title thereto, and that one who has agreed to purchase land upon the condition that the vendor convey to him a good and merchantable title is not, unless he had notice of them when the contract was made, required to accept a title burdened with restrictions. *Tiffany on Real Property*, 1686; 27 *R. C. L.* 508; 66 *C. J.* 909, 913; *Devlin on Deeds*, secs. 1514, 1520; *Batley v. Foerderer*, 162 Pa. 460, 29 A. 868; *Shea v. Evans*, 109 Md. 229, 72 A. 600; *Newbold v. Peabody Heights Co.*, 70 Md. 493, 17 A. 372; *Bealmear v. James*, 147 Md. 274, 128 A. 40; *Peabody Heights Co. v. Willson*, 82 Md. 186, 32 A. 386, 1077.

The single question which the appeal presents therefore is whether the land which is the subject of this proceeding is in fact burdened with any restrictions which will limit the free, unfettered, and complete use and en-

joyment thereof by the owner. It appears from the record, and is in fact conceded, that neither the vendor nor its predecessors in title have, by any conveyance of, or contract relating to, the precise land in controversy, directly or specifically imposed or attempted to impose any restrictions of any kind upon its use. But the appellant contends that when Mrs. Parrish and Mrs. Busey, the common grantors, owned the property, it was part of a larger tract which they owned, and that in grants of other parts of that larger tract, they imposed restrictions upon the land granted which constituted conclusive evidence of an intention on their part that such restrictions should affect the whole of the larger tract, and, as included therein, the lot involved here, as incidents of a plan or scheme of development common to the whole of the larger tract.

The doctrine that land may be thus indirectly subjected to building and use restrictions has been recognized in this state since *Thruston v. Minke*, 32 Md. 487, one of the earlier cases in which it was considered. Thruston and Minke, as tenants in common, owned a lot of ground at the northwest corner of Baltimore and George Streets, in Cumberland, Maryland, Thruston owning one undivided fourth and Minke three undivided fourths thereof. The lot was improved by a three story building used and known as a hotel. Part of the lot was vacant and unimproved. Thruston leased to Minke his undivided fourth interest in that part of the lot for ninety-nine years, by a lease which provided that the lessee in improving the lot might use the westerly wall of the hotel building to the height of the third-story floor as a party wall, and which further provided that the lease was upon the condititon that neither the lessee nor his assigns should build upon that part of the lot next the hotel any building higher than the third story of the hotel. Thruston then sold the reversion in the ground to one Campbell. Minke undertook to erect a building next the hotel in violation of that restriction, and Thruston then filed a bill praying an injunction restraining

Minke from proceeding with the construction of the building in violation of that condition of the lease. In granting that relief this court said:

"It is plain, from the nature of the condition, that it was inserted, as alleged in the bill, only for the benefit and protection of the hotel property, in which the lessor retained his estate, and that it was not in any respect intended for the benefit of the lessor as owner of the reversion in the property leased. It was, in its nature, an independent covenant or condition, made with Thruston, as owner of the contiguous property, for the benefit and protection of which it was intended; it was not a covenant running with the land demised, and did not pass to the assignee of the reversion.

"The effect of the condition was to create a right or interest in the nature of an incorporeal hereditament or easement appurtenant to the contiguous hotel property, and arising out of the parcel of land demised by the lease. The principle is correctly stated by the court in *Whitney v. Union R. R. Co.*, 11 Gray [Mass.] 359 as follows:

" 'When it appears, by a fair interpretation of the words of the grant, that it was the intent of the parties to create or reserve a right in the nature of a servitude or easement in the property granted, for the benefit of the other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right shall be deemed appurtenant to the land of the grantor, and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective parcels of lands.' "

The question came up again in *Halle v. Newbold*, 69 Md. 265, 270, 14 A. 662, 663, where it was said "that a grantor may impose a restriction, in the nature of a servitude or easement, upon the land that he sells or leases, for the benefit of the land he still retains; and if that servitude is imposed upon the heirs and assigns of the grantee, and in favor of the heirs and assigns of

the grantor, that it may be enforced by the assignee of the grantor against the assignee, with notice, of the grantee.

"It will be observed that in each of the cases above cited, the grantor imposed the servitude or conditions upon the land he sold in favor of the land that he retained. In the case at bar the grantors imposed the condition upon the land they retained, and in favor of the land they sold. But the principle is the same in both cases."

Those cases settled the principle that one granting a part of a tract, the remainder of which he retains, may impose restrictions upon the part granted for the benefit of the part retained, or upon the part retained for the benefit of the part granted, or both, and in *Summers v. Beeler*, 90 Md. 474, 45 A. 19, 20, the court was called upon to determine the quantum of evidence necessary to establish an intent to impose restrictions upon the use of land granted and of land retained which might be enforced *inter sese* by grantees of such land.

In that case it appeared that Rev. C. L. Keedy owned a tract of land which he divided into twenty-eight lots. He "sold and conveyed the plaintiffs lot No. 11 January 2nd, 1890; he had then sold and conveyed eight lots (Nos. 1, 2, 14, 3, 5, 9, 8, and 6), the first five without restriction, and the last three with the restriction mentioned, and he imposed upon the grantee of lot 11 the same restriction; but he imposed no servitude upon the land he retained, which embraced lot 10, in favor of the land he then sold, lot No. 11.

"He sold and conveyed the defendants lot No. 10, December 16th, 1890, and he imposed the same restriction upon that lot which he had imposed upon lot 11. But this restriction cannot inure to his benefit, as respects lot 11, upon the principle stated in 69th Md., because he had sold lot 11 nearly a year before; nor can it inure to the benefit of the plaintiff, upon that principle, as owner of lot 11, because there is no privity either of contract or estate between the plaintiff and the defendant."

The court, after referring to *Mulligan v. Jordan*, 50

N. J. Eq. 363, 24 A. 543, and *Nottingham Brick & Tile Co. v. Butler,* 15 Q. B. Div. 268, where it was said: "The principle which appears to me deducible from the cases is that where the same vendor, selling to several persons plots of land, parts of a larger property, exacts from each of them covenants imposing restrictions upon the use of the plots sold, without putting himself under any corresponding obligation, it is a question of fact whether the restrictions are merely matters of agreement between the vendor himself and his vendees, imposed for his own benefit and protection, or are meant by him, and are understood by the buyers, to be for the common advantage of the several purchasers. If the restrictive covenants are simply for the benefit of the vendor, purchasers of other plots of land from the vendor cannot claim to take advantage of them. If they are meant for the common advantage of a set of purchasers, such purchasers and their assigns may enforce them, *inter sese,* for their own benefit," said: "in the case before us, though Mr. Keedy took the pains to record, before sale, a plat of the land, and a description of the lots, he nowhere mentioned any restrictions or conditions as to their use. There was no auction sale at which such restrictions or conditions were made known to the public, nor was such announcement made in any other manner. Not only so, but the five lots first sold were sold without any restrictions, and the purchasers of all the other eleven lots on Mulberry Street (which were sold with restrictions), except Mrs. Summers, have treated these restrictions as not made for the common benefit of all these purchasers, both by their own violation of these restrictions, and by their failure to resist similar violations by the other purchasers. We think, therefore, the conduct both of the vendor and of the purchasers forbids the conclusions that their intent and understanding were that these restrictions were part of a general plan or scheme for the benefit of all the purchasers."

In *Safe Deposit Co. v. Flaherty,* 91 Md. 489, 46 A. 1009, the Canton Company sold to a certain Hugh

Gelston a tract of land, retaining, however, other land in the neighborhood of that granted to Gelston, a part of which adjoined the Gelston lot. The deed to Gelston imposed various use restrictions upon the land granted. The Canton Company subsequently released its right to enforce the restrictions. The defendant in that case agreed to buy a part of the Gelston tract, but refused to accept it on the ground that it was subject to the restrictions notwithstanding the release. In overruling that objection it was said: "In the present case there is a total absence of proof of the existence of any general plan or scheme for the improvement of the land of which the lot sold to Gelston formed a part, as there is a complete absence from the deed of any undertaking on the part of the grantor to subject the adjacent lands, which were then owned by him, to similar restrictions, and thus secure to his grantees that mutuality of benefit which lies at the basis of their right to enforce the restriction *inter sese.*"

In *Foreman v. Sadler's Excrs.*, 114 Md. 574, 576, 80 A. 298, much the same question was presented. In that case a corporation sold subject to certain restrictions three lots which were part of a large tract of land. The grantee sold one of the three lots subject to the same restrictions, and two without referring to restrictions. The corporation sold other lots to different purchasers without restrictions, and the remainder of the tract was sold at mortgage foreclosure without restrictions. Those facts were held to furnish no evidence of any general plan or scheme for the improvement of the corporation's land.

In *Wood v. Stehrer*, 119 Md. 143, 86 A. 128, the common grantors owned two lots each 200 feet square separated by Dalrymple Avenue, running east and west. They sold 50 feet of the lot on the south side of that avenue to one Wood, and afterwards partitioned the lot so that one of them, Simon, took the remainder of the 200 foot lot south of Dalrymple Avenue. In the deed to Wood the grantee covenanted to observe certain restric-

tions in the use of the land, and the grantors covenanted that "they" would not grant any part of the land owned by them in the same locality to any one except subject to the same restrictions. The remainder of the Simon lot became vested in his heirs, and they and their assigns conveyed it to Stehrer, who undertook to improve it in a manner which would have violated the restrictions had they applied to it. Wood thereupon asked that Stehrer be enjoined from proceeding with the improvements. In denying that relief, the court said: "The covenant does not provide that the grantors will use or hold the remainder of the property subject to the same restrictions imposed on the lot conveyed to the appellant. There is nothing in it which would have prohibited the grantors from erecting such improvements as Stehrer was about to erect. If it was intended to attach to the land remaining in the grantors the restrictions, conditions, and limitations imposed on the lot conveyed to appellant, surely it would have been so stated; but they only covenanted that 'they will not grant, convey, assign, or lease any of the ground,' etc., except under and subject to the aforesaid restrictions, etc. As the covenant does not attempt to regulate the use of the remaining property by the grantors, and does not bind or refer to their heirs and assigns, it is not to be presumed that it was intended to include them."

The important point decided in *Lowes v. Carter*, 124 Md. 678, 93 A. 216, was that recordation of a deed subjecting land to restrictions afforded constructive notice thereof to all persons dealing with the property, and that such notice was sufficient to charge such persons with liability in respect to the restrictive covenants.

In *Beetem v. Garrison*, 129 Md. 664, 672, 99 A. 897, the common grantor had granted land subject to certain restrictions, but had not itself covenanted to exact from other grantees of its retained land similar covenants. It was held that that circumstance alone was not sufficient evidence of any general plan or scheme of improvement. To the same effect was *Ringgold v. Denhardt*, 136

Md. 136, 147, 110 A. 321, 325, where, after an exhaustive review of the Maryland cases, it was said: "There must be something in the deed or other instrument, or some positive act done, to show an understanding that such sales are all to be made subject to the restrictions, in order to enable the purchasers to enforce them inter sese."

*Clem v. Valentine,* 155 Md. 19, 141 A. 710, pointed out that the burden is upon one seeking to enforce a restrictive covenant to show that it was the intention of the grantor that the restrictions were for the benefit of the land retained by the covenantee.

*Kleis v. Katcef,* 160 Md. 627, 154 A. 558, decided that a vendor may impose conditions on land which he sells for the benefit of land which he retains without reference to any general plan or scheme of improvement affecting such land.

In *Bealmear v. Tippett,* 145 Md. 568, 125 A. 806, it was held that the interest of one asking for the enforcement of a restrictive covenant must appear from the terms of the deeds or from "satisfactory proof" of a "uniform plan of development."

And in *Himmel v. Hendler,* 161 Md. 181, 155 A. 316, 319, it was said: "When by deed a grantor imposes a restriction upon the land or any portion thereof conveyed to the grantee, for the benefit of the land retained, or imposes such restriction upon the land retained, for the benefit of that granted, such act is in derogation of the natural right which the owner of property has to use and enjoy his own as he sees fit, so long as it does not work such an injury to others as the law will take cognizance of. Therefore, one of the cardinal canons of construction when dealing with such covenants is to construe them strictly against the person in whose favor they are made, and liberally in favor of the freedom of the land. A violation of the covenant occurs only when there is a plain disregard of the limitation imposed by its express words. So, also, when the words used are as logically susceptible of a construction which would

not violate the covenant, as of one which would violate it, the rule is to construe it so as not to constitute a violation. *Wood v. Stehrer,* 119 Md. 143, 149, 86 A. 128; *Saratoga Corporation v. Stables Co.,* 146 Md. 152, 158, 128, A. 270; *Meredith v. Danzer,* 142 Md. [573], 582, 121 A. 245; *Peabody Heights Co. v. Willson,* 82 Md. 186, 32 A. 386, 1077; *Beetem v. Garrison,* 129 Md. 664, 665, 99 A. 897; *Bealmear v. Tippett,* 145 Md. 568, 569, 125 A. 806; *Sowers v. Church of the Holy Nativity,* 149 Md. 434, 131 A. 785, 788; *Culp v. Firestone Co.,* 303 Pa. 257, 154 A. 479; *Downen v. Rayburn,* 214 Ill. 342, 73 N. E. 364; *Bartell v. Senger,* 160 Md. 685, 155 A. 174."

These cases sufficiently establish as the law of this state these principles: That one owning a tract of land, in granting a part thereof, may validly impose upon the part granted restrictions upon the use thereof for the benefit of the part retained, and upon the part retained for the benefit of the part granted, or upon both for the benefit of both; that, where the covenants in the conveyance are not expressly for or on behalf of the grantor, his heirs and assigns, they are personal and will not run with the land, but that, if in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity; that covenants creating restrictions are to be construed strictly in favor of the freedom of the land, and against the person in whose favor they are made; and that the burden is upon one seeking to enforce such restrictions, where they are not specifically expressed in a deed, to show by clear and satisfactory proof that the common grantor intended that they should affect the land retained as a part of a uniform general scheme of development.

Turning now to the facts, it appears that the common grantors owned land on both sides of Slade Avenue, but it does not appear how much land they owned on either side. On November 21st, 1919, they conveyed to one Weinberg a lot on the north side of Slade Avenue, part

of a larger tract owned by them north of that way, and in that conveyance the parties stipulated, for themselves, their heirs and assigns, that the use of the land granted should be subject to certain restrictions, and that such restrictions should "apply to the whole tract of land" owned by the grantors north of Slade Avenue. On October 21st, 1920, they granted another lot on the north side of Slade Avenue to one J. Frank Long and wife, subject not only to those but to additional restrictions. On June 1st, 1921, they granted a lot on the south side of Slade Avenue to C. I. Naylor and wife, subject to certain restrictions which the parties agreed should "run with and bind the land hereby conveyed." Those restrictions differed from those in the Long deed and in the Weinberg deed in this respect, that the Weinberg deed made no reference to the distance which a dwelling erected thereon was required to be set back from the Reisterstown road, but the Long deed required that any dwelling thereon be set back at least twenty feet, and the Naylor deed that it be set back forty feet.

On September 6th, 1920, they conveyed to Lerp and wife another lot on the south side of Slade Avenue; subject to the same restrictions as those in the Naylor deed. On December 15th, 1929, they conveyed to Murray and others a lot on the south side of Slade Avenue subject to certain restrictions which differed from those in the Long and Naylor deeds, in that they did not refer to the location of any dwelling on the land conveyed. This last deed was subsequent to the date of a mortgage alleged in the answer of the appellant to have been executed December 21st, 1925, through which, he alleges, the vendor takes title to the property, but since there was no proof of that mortgage, other than that reference, and as the answer was not read in evidence, there is no proof of that mortgage and it cannot be considered. Code, art. 16, secs. 183, 184.

The same grantors, on March 21st, 1923, also executed a deed of a lot on the north side of Slade Avenue to one Flaggs and wife, subject to restrictions similar in

some respects to those in the Long deed, but differing as to the location of any dwelling thereon, and containing a restriction as to the location of a garage not found in any of the other deeds.

The deeds referred to above are the only evidence offered to support appellant's contention that the lot of ground which he bought from the appellee is incumbered by restrictions of any kind. The record does not show how much land the common grantors owned when they executed the deed to Weinberg, nor does it show that their land either north or south of Slade Avenue had been laid off for development in accordance with any definite plan or at all. While the Weinberg deed does in express terms impose restrictions on the grantors' land north of Slade Avenue, it does not refer to their land south of that avenue, and, since the grantors clearly designated the land to which the restrictions should apply, no inference is permissible other than that they intended that the restrictions imposed by that deed should not apply to any land owned by them south of Slade Avenue. In the Long deed and the Flaggs deed, conveying lots north of Slade Avenue, the restrictions were not only more numerous than those in the Weinberg deed, but no reference was made in them to any land of the grantors other than that described in those deeds. In the Naylor deed, the Lerp deed, and the Murray deed, conveying lots south of Slade Avenue, the restrictions apply only to the lands respectively described in those several deeds, and they differ not only from each other, but also from the restrictions imposed on the grantors' land north of Slade Avenue. That is, the Weinberg lot and the retained land of the grantors north of Slade Avenue may be used for any lawful purpose other than that of a manufacturing, saloon, or public garage business, and buildings may be placed anywhere thereon; the Long lot may not be used for business purposes of any kind, nor for hotels, restaurants, store, roadhouse, signboards or supply station for oils or other products, and any dwelling erected thereon must be set

back twenty feet from the Reisterstown Road; the Flaggs deed provides that but one house may be erected on the lot conveyed thereby, which must be set back forty feet from the east side of the Reisterstown Road; the Naylor deed requires that "all buildings" shall be set back forty feet from that road; the Murray deed does not refer to the location of buildings on the land conveyed by it. Some of these deeds contain covenants against conveyances to negroes, others have no such restriction. These deeds are not sufficient to show (1) the existence of any general uniform scheme or plan for the development of the land owned by the common grantors south of the Reisterstown Road; (2) that the restrictions imposed by any one or all of the deeds affected any land of the grantors south of Slade Avenue except that actually conveyed by those deeds; but (3) they do clearly prove an intention on the part of the grantors to confine the restrictions imposed by those deeds to the several lots actually conveyed by them.

Since it was conceded that the appellee's title to the land described in the contract of sale was otherwise good and merchantable, it follows that the decree appealed from must be affirmed.

*Decree affirmed, with costs.*