MIDDLETON REALTY CO., ET AL. *v.* ROLAND PARK
CIVIC LEAGUE, INC., ET AL.

[No. 68, October Term, 1950.]

*Decided January 17, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Reuben Oppenheimer* and *George Gump,* with whom were *Frank, Skeen & Oppenheimer, Edward Azrael, Eli Frank* and *C. Morton Goldstein,* on the brief, for appellants.

*Wilson K. Barnes,* with whom were *Anderson & Barnes,* on the brief, for appellees, Roland Park Civic League, Inc., Roland Park Roads & Maintenance Corporation and Alvirn Apartments Corporation.

*Simon E. Sobeloff* and *Eugene Feinblatt* on the brief for appellee, Bernard I. Hendler.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree granting a permanent injunction against the violation of a restrictive clause in a deed.

The appellees and plaintiffs in this case are: Roland Park Civic League, Inc. (Civic League); The Roland Park Roads and Maintenance Corporation (Maintenance Corporation); and The Alvirn Apartments Corporation (Alvirn Apartments).

The Civic League, a Maryland corporation, is composed of members or property owners and tax payers living in Roland Park. This corporation owns 75% of the stock of the Maintenance Corporation, which is also a corporation of the State of Maryland. The Roland Park Company of Baltimore City (Roland Park Company) by deed on July 26, 1909, granted to the Maintenance Corporation all its rights and privileges in regard to the enforcement of the restrictive covenants in Plats 1, 2 and 3 of Roland Park. The Alvirn Apartments owns the property north of the lot now in question before this Court. Bernard I. Hendler, who owned 40% of the stock of the Roland Park Shopping Center was also admitted by Order of Court as a party plaintiff.

The appellants and defendants are The Middleton Realty Company, the owner of the lot involved in this case; The Franklin Realty and Finance Company, which manages the property involved under contract with The Middleton Realty Company; and David W. Chertkof, agent of The Middleton Realty Company and a 60% stock holder in the Roland Park Shopping Center which is directly south of the lot here in question.

On March 6, 1896, the Roland Park Company granted and conveyed unto the Lake Roland Elevated Railway Company, its successors and assigns, the lot here involved, "and described as the north 43 feet of lot numbered 4 in block number 21 as shown on plat number 1 of Roland Park." The deed further provides: "To have and to hold the above granted property unto the

said Lake Roland Elevated Railway Company, its successors and assigns, forever in fee simple, subject however to the following covenants and agreements which are hereby entered into by the said party of the second part, for itself, its successors and assigns, with the said Roland Park Company of Baltimore City, as part of the consideration for this deed. (1) That no store, factory, saloon, hospital, asylum, or institution of like or kindred nature, and no charitable institution shall be erected or maintained on the premises hereby conveyed, but that said premises shall be occupied and used by said party of the second part, its successors and assigns, including all tenants for railway or residence purposes only, and not otherwise."

Paragraph 2 in the restrictions requires that no residence shall be erected costing less than $3,000.00; Paragraphs 3 and 4 refer to set-backs; Paragraph 5 refers to a prohibition against cesspools; Paragraph 6 provides for the enforcement of the covenants and reads in part: "That if any building * * * be erected * * * in violation of any of the covenants * * * the said party of the second part, its successors or assigns, shall, upon a written notification by the said Roland Park Company, its successors or assigns, * * * at once tear down and remove such buildings" and that, if such building is not so torn down and removed, "the said Roland Park Company of Baltimore City, its successors or assigns, and its or their servants or agents, shall at all times have the right to enter upon the land hereby conveyed and tear down and remove any building or structure" erected or maintained on said land in violation of the said covenants or any of them. This paragraph further provides: "It is distinctly covenanted and agreed between the parties hereto that each and all of said covenants and agreements shall run with and bind the lot or lots hereby conveyed *and shall be observed and kept by each and all persons owning or occupying the same."* (Italics supplied). Paragraph 7 of the restrictions provides that the party of the second part, its

successors and assigns, shall be liable for a proportionate part of the charges in keeping streets lighted and repaired and maintaining the sewerage system. Before this basic deed was made in 1896, there were no restrictions of any kind as to the use of any of the lots in Block 21, this being the first conveyance from the original company in this block.

Block 21 is composed of ten lots. At its southern end, Lots 1 to 3 consist of a shopping center which contains several shops with apartments built above them. At the southwest corner of Lots 1, 2 and 3 is a small portion on which the city of Baltimore has constructed a fire engine house. Lot 4 is the lot now before us in this case, except for the southernmost seven feet thereof. Lots 5, 6 and a part of Lot 7 are now the property of the Alvirn Apartments and the restrictions confine their use to residential purposes except for the basement of the Upland Apartments built on this property which may be used for commercial purposes. There were no restrictions on these lots until bought by the Alvirn Apartments in 1925. A building was constructed there after 1900 and prior to 1915 and was used as an office building for the Roland Park Company. About 1915 this building was changed into the Upland Apartments, but the offices of the Roland Park Company still remained in the basement. After 1932 the offices of the Roland Park Company were moved. Since 1938 it has been used entirely for residential purposes. A part of Lot 7 and Lot 8 and a part of Lot 9 are to the north of the Alvirn Apartments, and stores are not prohibited thereon. These lots are now and have been for many years occupied as a residence. The remaining part of Lot 9 and a part of Lot 10 have the same restrictions as Lots 8 and 9. Residences are actually constructed upon these lots and they have been used for residential purposes since 1912. North of the lots in Block 21 are Lots 8 and 9 of Plat 3 which have been used for many years for residential purposes. The testimony does not show what the restrictions now are relating to those

lots. To the west of the lot involved in this case is Plat 2 of Roland Park. Immediately to the west is a large lot formerly occupied as a car barn by the United Railways. About two years ago this car barn was torn down and the Park Lynn Apartment house, containing thirty to forty apartments and a garage for the use of the apartment dwellers, were erected thereon. To the west of the Park Lynn Apartments is another large apartment house known as the Roland Park Apartments. The Roland Park Apartments lot was originally occupied by Roland Park Stables and is referred to in the case of *Saratoga Building & Loan Corp. v. Roland Park Stables Company*, 146 Md. 152, 128 A. 270. On the Roland Park Apartments lot are also a garage and repair shop which have been there since 1925. Since 1931 Lots 1 to 10 of Block 21 of Plat 1, the Park Lynn Apartment lots and the Roland Park Apartments have been zoned as "First Commercial". The two lots in Plat 3 to the north of Block 21 are zoned "Residential". The case of *Saratoga Building & Loan Corp. v. Roland Park Stables Company, supra,* is not in point here.

It was stipulated and agreed as follows: "All restrictions except the covenant or restriction imposing maintenance charges contained in conveyances of property as shown on Plat 2 of Roland Park expired in 1925. A number of property owners in Plat 2 renewed the expired restrictions, but these renewed restrictions have now expired. All restrictions except the covenant or restriction imposing maintenance charges, in Plat 3 expired on January 1, 1930. A number of property owners in Plat 3 renewed the expired restrictions. These renewed restrictions will expire on January 1, 1955. All restrictions except the covenant or restriction imposing maintenance charges, in Plat 4A and 5 will expire on January 1, 1960. All restrictions except the covenant or restriction imposing maintenance charges, in Plat 6 expired on January 1, 1950. The restrictions in Plat 1 are perpetual."

The situation therefore in Block 21 of Plat 1 is that all of that block can now be used for commercial purposes except Lot 4 here in question and Lots 5 and 6 and a part of Lot 7. However, Lots 5 and 6 and a part of Lot 7 can be changed to commercial purposes by agreement of the then present owner and the Maintenance Corporation and at the present time a part of Lots 5, 6 and 7 can be used for commercial purposes although now used residentially. To the north of Block 21 are two lots now used for residential purposes, but the record does not show whether there were any restrictions against the use of these lots for commercial purposes.

It is stipulated and agreed in this case: "Since 1897-1898 and continually thereafter until 1947-1948, the property in *quo* as well as the lot to the west (now an apartment house and garage) were used as a street railway waiting station, street car tracks and a large car barn. Such uses were abandoned by the Baltimore Transit Company, following which the lot in *quo* was conveyed to the Middleton Realty Company on September 2, 1949." The appellees discovered that the appellants contemplated building a store on Lot 4 in Block 21 and thereupon filed a bill of complaint in this case praying for an injunction forbidding the building of the store, which injunction by decree was granted on December 13, 1949. From that decree the appellants appeal to this Court.

Of course, the policy of the law is in favor of the free transfer of land and restrictions are to be strictly construed against the grantor. *Yorkway Apartments v. Dundalk,* 180 Md. 647, 650, 26 A. 2d 398, and cases there cited. Also, where the restrictions are not specifically expressed in a deed, the burden is upon the one seeking to enforce such restrictions to show by clear and satisfactory proof that the common grantor intended that they should affect the land retained as part of a general uniform scheme of development. *McKenrick v. Savings Bank,* 174 Md. 118, 128, 197 A. 580.

The appellants contend that the appellees here cannot enforce the covenant against the erection of the store

on the lot here in question because "the covenant is not expressly made in favor of the 'successors or assigns' of the property to evidence any general scheme of development as to the property in question." In other words, they contend, because the words "its successors and assigns" are not contained in the *habendum* clause, *supra,* after the words "Roland Park Company of Baltimore City" and before (1) of the restrictions, *supra,* that the successors and assigns of the Roland Park Company have no right to enforce the covenants in that deed.

The sixth covenant of the 1896 deed provided for the enforcement of the preceding five restrictions and the right of enforcement is given to the party of the second part, "its successors or assigns". The right of enforcement therefore clearly goes to the successors or assigns of the Roland Park Company because the deed specifically provides that the Roland Park Company, "its successors or assigns and its or their agents or servants shall at all times have the right to enter" and tear down and remove the buildings on the property built contrary to the restrictions. Also, as Judge Niles said with reference to this argument: "It seems to me that the argument is based only on certain words, and disregards the obvious and larger facts, such as the filing of the plats, the dedication of the streets and alleys, the intention of the parties as shown by their conduct over a period of more than fifty years, and by their activity in a determined and successful resistance to business encroachment, in which both the Maintenance Corporation and the other grantees have participated from time to time over this whole period." In the 1896 deed, the Lake Roland Elevated Railway Company "for itself, its successors and assigns" as part of the consideration for the deed specifically agreed to abide by the restrictions. The appellants are the successors and assigns of the Lake Roland Elevated Railway Company. In the same deed the Roland Park Company of Baltimore City, "its successors or assigns" were specifically granted

the power to enforce those restrictions. The appellees are the successors and assigns of the Roland Park Company. Furthermore, in covenant (6) *supra*, it was covenanted by the parties that each and every covenant "shall be observed and kept by each and all persons owning or occupying the same." We are therefore of opinion that this restriction is specifically expressed in the deed and the right to enforce the covenants goes to the successors and assigns of the Roland Park Company, the appellees, against the successors and assigns of the Lake Roland Elevated Railway Company, the appellants. *Clem v. Valentine*, 155 Md. 19, 141 A. 710. These covenants and restrictions "were not intended for the benefit of the grantor alone, but mainly for that of the grantee and those similarly situated". *Wehr v. Roland Park Company*, 143 Md. 384, 392, 122 A. 363, 366.

The appellants contend that under all the circumstances of this case an equity court should not in its sound discretion enforce this restriction against the building of stores on Lot 4 because such enforcement will result in inequity. They claim that the restriction on Lot 4 has outlived its usefulness or reason for existence and the application for relief in this case is addressed largely to the conscience of the court and is governed by equitable principles. They point out that by agreement of the Maintenance Corporation and the then owner of Alvirn Apartments this whole block could be used for stores except Lot 4 and therefore there is no real reason to make Block 21 residential. They rely on *Needle v. Clifton Realty Corporation*, 195 Md. 553, 73 A. 2d 895; *Oak Lane Corporation v. Duke*, 196 Md. 136, 75 A. 2d 80.

The case of *Needle v. Clifton Realty Corporation, supra*, was one for specific performance of a contract for the sale of real estate, to test the validity of restrictions in a deed. It appeared that the original plan of development had been changed and the chancellor found that a good and marketable title to the property could be given. On appeal this Court, in affirming the chancellor, held that the purpose of the restrictions was to

make the locality one suitable for residence. However it had grown into a thriving business district. Many of the lots had been sold without any restrictions. Therefore it was held that the restrictive covenants were no longer effective and it would be inequitable to enforce them. *Oak Lane Corporation v. Duke, supra,* was a suit for specific performance of a contract for the sale of land to be used for erection of an apartment house. Many violations of the restrictions against the erection of an apartment house. Many violations of the restric- of more than one house on a 50 foot lot were shown and no action taken thereon. Grantor did not obligate itself to convey all lots in the subdivision subject to the same restrictions. There was no common plan. This Court affirmed the chancellor in granting specific performance and found that the covenants were personal and did not run with the land.

There is no doubt in this case that all parties involved had notice of this covenant in the deed. The purchaser bought the property knowing of this restriction. Mr. Nichols, the President of Alvirn Apartments, testified that when the Upland Apartment was purchased in 1925, they relied on the provisions of the 1896 deed from the Roland Park Company to Lake Roland Elevated Railway Company. He actually checked the provisions of the deed. The Alvirn Apartment stock is owned solely by him and members of his family. Since about 1938 the basement of the Upland Apartment, which was formerly used as offices, has been used for residential purposes only. He further testified: "Under present conditions, with the existing apartment house known as the Upland, it would deprive us of light, view, and with the potential location of the additional structure on the lot adjoining to the south, it would practically prevent us from developing that lot because if they are permitted to operate contrary to this restriction in the deed referred to, they could even build a brick wall right down to my party line, and it would be impractical to put up an apartment house 10 feet distant from that wall. Whereas, if they

are required to confine themselves within the restrictions, they would have to keep back 10 feet south of that party line and would give us a 20 foot area there for construction purposes. Likewise, classification of the kind of business that may be indicated in these particular stores has many ramifications. The type of business that might want to start now, and in all probability be changed subsequently, it would increase traffic hazards, and bring an influx of people there that possibly would be injurious to the tranquility and quiet of the neighborhood." Mr. Hendler, one of the appellees, and the minority stock holder in the Roland Park Shopping Center claims the protection of the restrictive covenant against business use in order to avoid competition and to prevent the dominant stock holder in the Roland Park Shopping Center from erecting a store on the lot in question, which may possibly injure the shopping center to the south.

It was said in *McKenrick v. Savings Bank, supra,* 174 Md. at page 128, 197 A. at page 584. "* * * one owning a tract of land, in granting a part thereof, may validly impose upon the part granted restrictions upon the use thereof, for the benefit of the part retained, and upon the part retained for the benefit of the part granted, or upon both for the benefit of both * * *." *Scholtes v. McColgan,* 184 Md. 480, 488, 41 A. 2d 479.

Although this lot is only 43 feet wide, the chancellor found that there are one hundred and seventeen properties in Roland Park that are 40 feet in width or less. A small residence or an apartment could be built on this lot according to the testimony. There is no testimony to the contrary. The decree will be affirmed.

*Decree affirmed, with costs.*